580 A.2d 1382

Vincent J. BOYCE, Appellant,

v.

SMITH–EDWARDS–DUNLAP COMPANY, Regency Typographic Services, Inc., and David Kahn

v.

FRANKLIN PRINTING COMPANY, INC., Quill Typographers, Inc. and John S. Logan t/a John S. Logan Associates.

Vincent J. BOYCE

v.

SMITH–EDWARDS–DUNLAP COMPANY, Regency Typographic Services, Inc., and David Kahn

v.

FRANKLIN PRINTING COMPANY, INC., Quill Typographers, Inc. and John S. Logan t/a John S. Logan Associates.

Appeal of REGENCY TYPOGRAPHIC SERVICES, INC.

Superior Court of Pennsylvania.

Argued June 21, 1990.

Decided Sept. 25, 1990.

348

Walter J. Timby, Jr., Philadelphia, for appellant in No. 330, and for appellees in No. 331.

Ronald H. Surkin, Philadelphia, for appellant in No. 331, and for appellees in No. 330.

Before ROWLEY, MCEWEN and JOHNSON, JJ.

ROWLEY, Judge:

Vincent J. Boyce and Regency Typographic Services, Inc. (Regency) have filed cross-appeals from the Final Judgment entered in the trial court on December 7, 1989.

This case arises out of the following set of facts. Boyce was employed by Typographic Services, Inc. until February 21, 1980, when the assets of Typographic Services were acquired by Universal Graphics, Inc. (Universal), a Delaware corporation doing business in Philadelphia. Universal was in the business of preparing and printing high quality, specialty advertising typography. Boyce became a ten-per-

cent owner of Universal. In addition, Boyce and Universal Graphics entered into a written three-year employment agreement. Pursuant to the Employment Agreement, Boyce agreed to certain restrictive covenants, including the following:

8. The parties hereto agree that one of the primary purposes in having this Employment Agreement is to limit Executives [sic] interference with Employer's business after termination for whatever reason and therefore, except as provided and possibly limited pursuant to Section 22 herein, the Executive agrees that, both during and for a two-year period after the period of his employment by Employer, its subsidiaries or affiliates, (whether pursuant to this Agreement or otherwise), he will not (without the express written consent of Employer):

(a) engage, directly or indirectly, as proprietor, partner, shareholder, director, officer, employee, agent, consultant or in any other capacity or manner whatsoever, in any business activity competitive directly or indirectly with the business of Employer, its subsidiaries or affiliates, as constituted during his employment and at the termination thereof; .

(b) make known or otherwise make available to any person, firm or corporation the names or addresses of any of the customers (whether the corporate entity or the individuals employed by such corporate entity or the individuals employed by such corporate entity) of the Employer or any other information pertaining to them; or

(c) call on, solicit, or take away, or attempt to call on, solicit or take away or communicate with, in any manner whatsoever, any of the customers (whether the corporate entity or the individuals employed by such corporate entity) of the Employer on whom the Employee called or with whom he became aware during his employment with the Employer, either from himself or for any other person, firm, or corporation.

* * * * * *

18. It is expressly understood by the parties to this Agreement that certain provisions, rights and obligations pursuant to this Agreement, are expressly meant to survive the termination date of this Agreement and shall be given full effect pursuant to their terms.

After Boyce and Universal entered into this Agreement, Regency, a Pennsylvania corporation, bought Universal's stock. Regency is controlled by its parent corporation, Smith–Edwards–Dunlap Company (SED), a Pennsylvania corporation engaged in the printing and graphic reproduction business in the Philadelphia area.

When Regency acquired Universal's stock, Boyce also sold his stock in Universal to Regency and entered into a Stock Purchase Agreement, which included the following restrictive covenant:

B. Globe, Empery, McGovern and Boyce each covenant and agree that they will not, for a period of five (5) years after the Closing Date, except with the express prior written consent of Buyer, directly, or indirectly, whether as employee, owner, partner, agent, director, officer, shareholder or in any other capacity, for their own account or for the benefit of any other person, engage in or establish any typesetting service business within 25 miles from any of the cities or towns (and the counties within such cities or towns are located), listed on Schedule 13B, which Seller warrants as constituting all of the towns or cities in which the Company's Customers are located as of the Closing Date, and except that, unless Boyce is hired by Empery, or Globe or any entity affiliated with Empery, Boyce shall be bound for only two years following February 21, 1983 in accordance with his employment agreement.

Boyce continued working for Universal after its acquisition by Regency until February 26, 1985. In March 1985, Boyce began employment as President and Chief Operating Officer of Franklin Printing Company (Franklin) located in Delaware County. Franklin is engaged in the business of printing and graphic reproduction. A year later, Boyce also

became involved with Quill Typographers, Inc. (Quill), which is engaged in producing high quality special advertising and typography. Quill is located in the same facility as Franklin.

Subsequently, many of Universal's employees quit and went to work for Franklin. On February 21, 1986, Universal went out of business.

On April 4, 1986, Boyce filed a complaint against SED, Regency,[1] and David Kahn, principal officer of SED, seeking to recover approximately $5,000 in unpaid vacation pay, plus punitive damages. Regency filed a counterclaim against Boyce alleging that he had breached restrictive covenants in violation of their employment agreement, that he had breached a covenant of good faith and fair dealing, that he had engaged in unfair competition, that he had defamed SED, Regency and Kahn, and that he had converted their property. Regency requested damages of several million dollars. Regency also filed a complaint against Franklin, Quill, John S. Logan, and John S. Logan Associates[2] alleging intentional interference with contractual relations, unfair competition, and intentional interference with present and prospective contractual and business relations.

This matter originally went to arbitration, but was subsequently transferred to the major trial list. In June, 1988, trial commenced before The Honorable Curtis Carson. In the middle of the trial, Judge Carson declared a mistrial and recused himself from further involvement in the case.

This case was then assigned to The Honorable Lawrence Prattis. After a three week trial, the trial court entered a directed verdict against Boyce on his claim for vacation pay. The trial court also entered directed verdicts in favor of

1. The complaint originally listed Typographic Services, Inc. as a defendant, but was later amended to substitute Regency as successor-in-interest of Typographic Services.

2. Logan was a salesman for Universal who left that employment to become owner and operator of Logan Associates, a typesetting company affiliated with Franklin.

Boyce on Regency's counterclaims.[3] The trial court entered nonsuits with respect to SED's, Regency's, and Kahn's claims against Franklin, Quill, Logan and John S. Logan Associates.

The parties filed motions for a new trial which the trial court denied and Boyce and Regency filed these appeals. Appellant Boyce raises the following issue on this appeal: whether the trial court erred in holding that the restrictive covenant contained in his employment contract with Universal could be used by Smith–Edwards–Dunlap Company and Regency Typographic Services, Inc. as a defense to Boyce's claim for vacation pay.

Appellant Regency raises the following issues on this appeal: (1)(a) whether a court, in an action at law for damages for breach of a restrictive covenant, can refuse to allow the action to proceed on the ground that the covenant is overly broad, despite the contrary holding of *Krauss v. M.L. Claster and Sons, Inc.*, 434 Pa. 403, 254 A.2d 1 (1969); (1)(b) whether a court may refuse to allow a restrictive covenant to be used in an employer's claim for damages for breach of that covenant, while allowing that covenant to be used in the employer's defense to an employee's claim for unpaid compensation; (1)(c) alternatively, were the restrictive covenants in issue reasonable in scope, and if not, was the court obliged to enforce those that were not overly broad, and then limit and enforce as limited those that were, instead of refusing to enforce them in their entirety; (2) whether Regency adduced sufficient evidence to require that its claims of unfair competition and intentional interference with contractual relations be submitted to the jury; and (3) whether there is sufficient evidence for the jury to conclude that Boyce's breach of his fiduciary duty of loyalty was a legal cause of the loss sustained by Universal Graphics, Inc. from June, 1985 to February, 1986.

After a review of the record, we affirm the entry of a directed verdict in favor of Regency as to Boyce's claim for

**3.** Regency has not pursued the defamation and conversion claims on appeal.

vacation pay appealed at No. 330. We vacate the directed verdict in favor of Boyce as to Regency's counterclaim for breach of contract appealed at No. 331 and we remand for a determination of causation and damages. We affirm the entry of nonsuits as to Regency's claims for interference with contractual relations and unfair competition appealed at No. 331. We quash the appeal as to the directed verdict against Regency with respect to Regency's claim against Boyce for breach of the fiduciary duty of loyalty appealed at No. 331.

## I. APPEAL OF BOYCE [330 PHILADELPHIA 1990]

Boyce claims that the trial court erred in entering a directed verdict against him with respect to his claim for vacation pay on the basis that the restrictive covenant contained in the Employment Agreement could be used as a defense.

■ When deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the non-moving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony. *Cooke v. Travelers Ins. Co.*, 350 Pa.Super. 467, 504 A.2d 935 (1986). A directed verdict can only be granted where the facts are clear and there is no room for doubt. *Id.* On review, we can reverse only if an abuse of discretion or error of law which controlled the outcome of the case occurred. *Bucchianeri v. Equitable Gas Co.*, 341 Pa.Super. 319, 491 A.2d 835 (1985). With this standard in mind, we affirm the entry of a directed verdict as to Boyce's claim for vacation pay.

The trial court, while finding that the restrictive covenants were too broad to be enforced, permitted Regency to use Boyce's breach of the covenants as a defense to Boyce's claim for back pay. Boyce claims that this was error.

■ Generally, to be enforceable, a restrictive covenant in an employment contract must be reasonably limited in both time and territory. *Ress v. Barent*, 378 Pa.Super. 397,

548 A.2d 1259 (1988). However, following, *Krauss v. M.L. Claster and Sons, Inc.*, 434 Pa. 403, 254 A.2d 1 (1969), we conclude that, because this is an action at law, the reasonableness of the restrictive covenant is not relevant.

█ In *Krauss*, an employee filed an action in assumpsit to recover monies allegedly due to him under an employment contract. The employer raised as a defense the fact that the employee breached a restrictive covenant by accepting employment with a competing company. The Supreme Court affirmed the trial court's entry of a judgment against the employee holding that where the breach of a covenant not to compete is raised as a legal defense to an action at law, the question of whether the covenant is too harsh to be enforced in equity is irrelevant. *Id.*

While the present case is different from *Krauss* in that in *Krauss,* the employer refused to pay the employee *further* compensation, while in the present case, Boyce is attempting to recover back vacation pay, this distinction does not require a reversal of the directed verdict against Boyce. Along with the abovementioned restrictive covenants, the following paragraph appears in the Employment Agreement:

5(c) Notwithstanding anything in this Agreement to the contrary and in addition to any other rights or remedies Employer may have, if at any time the Executive (whether during the Employment period or thereafter as provided herein) has without the express written consent of the Employer, engaged, directly or indirectly, as proprietor, partner, shareholder, director, officer, employee, agent, consultant, or in any other capacity or manner whatsoever, in any business activity competitive directly or indirectly with the business of Employer, and/or any of its affiliates or any of their direct or indirect subsidiaries as such business is constituted during his employment by Employer or at the termination thereof, (whether pursuant to this Agreement or otherwise), then the obligation of Employer to pay any compensation as provided in any Section of this Agreement including Gross Salary, shall

terminate and from and after such termination neither the Executive, his beneficiary nor any of their legal representatives or distributees shall have any right to receive any payment(s) in connection herewith.

There is nothing in the record to indicate that the Employment Agreement was not part of an arms-length bargain between knowing and willing parties. Therefore, Boyce is bound by the terms of the Agreement in an action at law. *Krauss, supra.* Looking at the holding of *Krauss,* along with paragraph 5(c) of the Employment Agreement, which allows the Employer to withhold compensation in the event of a breach of a restrictive covenant, we find that evidence of the breach by Boyce of the restrictive covenant was properly admitted as a defense to Boyce's claim for vacation pay.

■ Boyce also argues that because the Employment Agreement expired on February 21, 1983, he was only bound by the restrictive covenants for two years after that date, February 21, 1985, and that he did not breach the covenants by starting employment with Franklin in March, 1985. However, Boyce agreed not to become involved with a competing business for "a two-year period after his period of employment by employer, its subsidiaries or affiliates, (whether pursuant to this Agreement or otherwise)." Clearly, the covenant restricts Boyce's activities for two years following his period of employment, which is not necessarily the same as the term of the contract. Boyce continued to work for Regency until February 21, 1985. Therefore, he was bound by the restrictive covenants for two years after that date, and he began to work for Franklin and Quill before the two year time period had expired.

■ Boyce additionally claims that the Stock Purchase Agreement he entered into with Regency superceded the Employment Agreement and he was therefore no longer bound by the Employment Agreement. This claims fails because the Stock Purchase Agreement explicitly stated

that "the terms of [Boyce's] Employment Contract shall not be limited by the terms of this Agreement." Stock Purchase Agreement at p. 45. Furthermore, the Stock Purchase Agreement incorporated by reference Boyce's Employment Agreement. One part of a contract should not be interpreted so as to annul another part and the writings which comprise an agreement must be interpreted as a whole. *Shehadi v. Northeastern National Bank of Pennsylvania*, 474 Pa. 232, 378 A.2d 304 (1977). Construing both the Employment Agreement and the Stock Purchase Agreement together, it is apparent that Boyce was bound by the terms of the Employment Agreement for two years following the termination of his employment.

For the above reasons, the trial court's entry of a directed verdict against Boyce with respect to his claim for vacation pay is affirmed.

## II. APPEAL OF REGENCY [331 PHILADELPHIA 1990]

In both its counterclaim against Boyce and in its claim against the additional defendants, Regency sought to recover the identical "damages to [Regency's] business, profits, and goodwill" in an amount not less than $100,000.00. The theories supporting this claim as to Boyce were 1) that he had violated the restrictive covenants, 2) that he had engaged in unfair competition by systematically inducing Universal's employees to resign from Universal and undertake employment with Franklin or Quill, both before and after Boyce's own departure from Universal, and 3) that he had breached the contractual fiduciary covenant of good faith and fair dealing by acting contrary to the best interests of Universal.

The theories supporting the claim against the additional defendants were 1) that Franklin, Quill, and Logan induced and encouraged Boyce to breach his employment agreement with Universal; 2) that by encouraging Universal's employees to leave Universal and begin working for Franklin or Quill where it was anticipated that the former Universal

employees would reveal Universal's trade secrets and lure Universal's customers away from Universal, the additional defendants, together with Boyce, engaged in unfair competition; and 3) that by inducing and encouraging Universal's employees to leave Universal and begin working for Franklin or Quill, and by "steal[ing]" Universal's actual and potential customers, the additional defendants, together with Boyce, intentionally interfered with present and prospective contractual relations.

As to the counterclaim against Boyce, the trial court granted a directed verdict in favor of Boyce. As to the claim against the additional defendants, the trial court granted a nonsuit.

## A. Regency v. Boyce

### 1. Breach of Restrictive Covenants

█ Regency contends that the trial court erred in refusing to enforce the restrictive covenants on the ground that they were overly broad. Before discussing this issue, we must clarify that Regency did not bring an action at equity to enforce the restrictive covenants. Had Regency done so, then the trial court would have been correct in considering the reasonableness of the covenants. Instead, Regency brought an action at law to recover for damages allegedly sustained as a result of Boyce's breach of the covenants. Under *Krauss, supra,* in this situation, the trial court erred in entering a directed verdict against Regency on its breach of contract claim on the basis that the covenants were too broad to be enforced.

The trial court was initially correct when noting that, in *Krauss,* the restrictive covenant was used as a defense, rather than affirmatively in a breach of contract action. However, the Supreme Court in *Krauss* discussed the case of *Ross v. Houck,* 184 Pa.Super. 448, 136 A.2d 160 (1957), in which the plaintiff brought an action for damages based on

the violation of a covenant not to compete.[4] In *Ross,* the Superior Court considered the reasonableness of the covenant when deciding that damages for its breach were appropriate. In *Krauss,* however, the Supreme Court disapproved of the use of this standard in *Ross* and stated that "in an action at law, the reasonableness of any given contractual term simply is not relevant." *Krauss, supra,* 434 Pa. at 408, 254 A.2d at 3.

Although *Krauss* involved a different procedural situation than that involved in this case, the reasoning of *Krauss* is sound and is applicable to the present case. In *Krauss,* the Supreme Court explained that:

Although as a general rule, covenants not to compete are unenforceable if overly broad in time, territory, or protection or if they create an unreasonable hardship, those rules are equitable in nature. Their rationale is that overly broad covenants not to compete deprive a man of his opportunity to make a living, and are thus unreasonable and as a result unenforceable in equity. *Id.* at 407, 254 A.2d at 3 (citations omitted).

The soundness of this rationale is further supported by the Supreme Court's clarification of damages. Although the covenant may be overly broad, damages would be appropriate only to the extent of actual harm inflicted by the breach. *Id.,* 434 Pa. at 408, n. 2, 254 A.2d at 3, n. 2. Therefore, it must be determined whether the losses sustained by Universal were proximately caused by Boyce's breach and the amount of damages, if any, necessary to compensate for these losses. We remand to the trial court for this determination.

We need not consider Regency's alternative argument that the trial court erred in refusing to enforce those covenants which were not overly broad and limit those covenants which were overly broad, and as limited, enforce them.

4. Although the restrictive covenant in *Ross* arose out of a sales agreement, while in the present case the covenants arise from employment agreement, the factual situations are analogous.

## 2. Breach of Fiduciary Duty of Loyalty

Regency argues that Boyce, while still employed by Universal, breached his fiduciary duty of loyalty by causing Fagan, a former Universal employee, to become employed at Williams and Marcus, Franklin's predecessor, in December, 1984. Regency argues that this breach was a legal cause of the losses sustained by Universal from June, 1985 to February, 1986 when it went out of business because Fagan's employment at Williams and Marcus between December 1984 and March 1985, when Boyce purchased Williams and Marcus, kept Williams and Marcus alive while Boyce was looking around for alternative sources of financing to facilitate his purchase of Williams and Marcus.

At trial, the trial court concluded that there was sufficient evidence to submit to the jury the question of whether Boyce had breached his duty of loyalty. *See SHV Coal, Inc. v. Continental Grain Co.*, 376 Pa.Super. 241, 545 A.2d 917 (1988), alloc. granted, 522 Pa. 596, 562 A.2d 321 (1989) for discussion of duty of loyalty. However, when Regency indicated that it sought to prove a causal connection between this alleged breach of the duty of loyalty and the damages it suffered between June 1985 and February 1986, i.e., the failure of its business, the trial court refused to allow evidence of such damages. Instead, the only evidence of damages which the Court would permit Regency to introduce was the amount of salary paid to Boyce from December 3, 1984, when Fagan left Universal's employment, through February, 1985, when Boyce left Universal. As a result of this ruling, the parties "agreed" and requested that a directed verdict be entered against Regency as to the claim for breach of the duty of loyalty, with the stipulation that, if on appeal we found that the trial court erred in limiting the damages as it did, the directed verdict would be vacated and the issue could be pursued at the new trial.

Even though the trial court entered a directed verdict at the request of the parties, technically, there has been no ruling on liability with respect to this claim. Notwithstanding the fact that the liability issue has not been

determined, Regency wants us to consider the issue of damages. In effect, the entry of a directed verdict was used as an attempt to appeal an interlocutory order. A ruling on liability without a ruling on damages is not a final order which can be appealed. *Williams v. Erie Insurance Exchange*, 290 Pa.Super. 279, 434 A.2d 752 (1981). Likewise, a ruling on damages, without a ruling on liability is not a final order and cannot be appealed.

▌▌▌▌▌ We have no jurisdiction to consider this issue. An agreement by the parties to a suit does not create jurisdiction where it would not otherwise exist. *Waddell v. Trostel*, 336 Pa.Super. 527, 485 A.2d 1208 (1984); *Pullium v. Laurel School District*, 316 Pa.Super. 339, 462 A.2d 1380 (1983). Furthermore, the Superior Court can raise the issue of lack of subject matter jurisdiction sua sponte. *Andursky v. Andursky*, 382 Pa.Super. 1, 554 A.2d 571 (1989).

Because jurisdiction is lacking, we quash the appeal as to this issue.

### 3. Unfair Competition

Regency alleges that there was sufficient evidence to submit to the jury Regency's claims of unfair competition against Boyce, Franklin, Quill, and Logan.[5]

▌▌▌ Regency claims that Boyce, Franklin, Quill, and Logan engaged in unfair competition by systematically inducing Universal employees to leave Universal and come to work for Franklin. Offering employment to another company's at-will employee is not actionable in and of itself. *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768 (1965). However, systematically inducing employ-

---

**5.** Regency's claim against Franklin, Quill, and Logan for damages for the failure of its business due to unfair competition is identical to its claim of unfair competition asserted in the counterclaim against Boyce. Since the trial court's directed verdict in favor of Boyce on this claim had the same effect as the non suit entered in favor of Franklin, Quill, and Logan on the unfair competition claim, and since Regency's argument on appeal as to the claim of unfair competition against Boyce as well as Franklin, Quill, and Logan is identical, our disposition of the unfair competition issue as to Boyce also controls the unfair competition issue as to Franklin, Quill, and Logan.

ees to leave their present employment is actionable "when the purpose of such enticement is to cripple and destroy an integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employes." *Id.,* 417 Pa. at 182, 207 A.2d at 771 (quoting *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 633–634, 136 A.2d 838, 847 (1957)).

 While the record shows that a substantial number of Universal employees left that employment and immediately, or soon after, began to work at Franklin, there is no evidence to support Regency's contention that Boyce induced these employees to work for Franklin in order to cripple and destroy Universal. The fact that many of these employees were initially employed at Franklin as maintenance and construction workers, does not prove that Boyce hired these people with the intent to harm Universal. It is entirely plausible that Boyce hired these employees before the printing business was ready to begin in order to ensure that they would be available when the business started. Because Regency did not provide sufficient evidence to justify sending this issue to the jury, we affirm the entry of a nonsuit.

B. Regency v. Franklin, Quill, and Logan

1. Intentional Interference with Contractual Relations

Regency argues that the trial court erred in granting a nonsuit with respect to Regency's claim that Franklin, Quill, and Logan intentionally interfered with contractual relations, i.e. Boyce's Employment Agreement.

In *Paul v. Hess Bros.,* 226 Pa.Super. 92, 312 A.2d 65 (1973), we discussed the standard of review on appeal from a compulsory nonsuit:

[T]he plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in the plaintiff's favor. A compulsory nonsuit may be entered only in a clear case where the

facts and circumstances lead unerringly to but one conclusion.

*Id.*, 226 Pa.Superior Ct. at 94–95, 312 A.2d at 66 (citations omitted). *See also Storm v. Golden*, 371 Pa.Super. 368, 538 A.2d 61 (1988).

In order to establish the tort of intentional interference with contractual relations, a plaintiff must show the following:

1. that the acts complained of were willful and intentional;
2. that they were calculated to cause damage to the claimant in its business;
3. that the acts were done with the unlawful purpose of causing damage and loss to the claimant without right or justifiable cause on the part of the respondent; and
4. that actual damage and loss resulted.

*Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971); *R.P. Russo Contractors and Engineers, Inc. v. C.J. Pettinato Realty and Dev. Inc.*, 334 Pa.Super. 72, 482 A.2d 1086 (1984).

Regency claims that the trial court entered the nonsuit based on its conclusion that the restrictive covenants in Boyce's Employment Agreement were void as against public policy. However, a review of the record shows that the trial court granted the nonsuit because there was insufficient evidence to justify a finding in Regency's favor. Because Regency has not provided any evidence to establish the elements of this tort, we affirm the entry of a nonsuit as to this issue.

## CONCLUSION

After a review of the record, we affirm the entry of a directed verdict against Boyce as to Boyce's claim for vacation pay appealed at No. 330. We vacate the directed verdict against Regency as to Regency's counterclaim for breach of contract appealed at No. 331 and we remand for a determination of causation and damages. We affirm the entry of nonsuits as to Regency's claims for interference

with contractual relations and unfair competition appealed at No. 331. We quash the appeal as to the directed verdict against Regency with respect to Regency's claim against Boyce for breach of the fiduciary duty of loyalty appealed at No. 331. Jurisdiction is relinquished.