J-A33020-16

2017 PA Super 109

| METALICO PITTSBURGH INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DOUGLAS NEWMAN, RAY MEDRED, AND ALLEGHENY RAW MATERIALS, INC. | No. 354 WDA 2016 |

Appeal from the Order Dated January 20, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-019082

BEFORE: LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

OPINION BY SOLANO, J.:                    **FILED APRIL 19, 2017**

Appellant Metalico Pittsburgh, Inc. appeals from the order granting partial[1] summary judgment in favor of Appellee Allegheny Raw Materials, Inc. ("ARM") and its current employees, Appellees Douglas Newman and Ray Medred (together, "Employees"). We reverse.

Newman and Medred formerly were employed by Metalico, a scrap metal broker, and Metalico brought this action to enforce non-solicitation provisions in their Metalico Employment Agreements. Newman and Medred began working for Metalico in 2011 and signed Employment Agreements that were effective as of September 19, 2011. The Agreements, which were the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] As set forth below, all outstanding claims were resolved prior to appeal.

same in all material respects,[2] stated that each employee would be employed for a term of three years, with an option to renew, and also set compensation and benefits.

Each Employment Agreement included the following non-solicitation provisions:

> **(b)** *__Covenants of the Executive.__* In consideration of the acknowledgments by the Executive, and in consideration of the compensation and benefits to be paid or provided to the Executive by the Employer, the Executive covenants that he will not, directly or indirectly:
>
> \*   \*   \*
>
> (ii) whether for the Executive's own account or for the account of any other person, at any time during the Employment Period or the Post-Employment Period, solicit business of the same or similar type being carried on by the Employer, from (A) any person listed on Schedule A to this Agreement and (B) any other person known by the Executive to be a supplier of the Employer on or before the Termination Date, in either case whether or not the Executive had personal contact with such person during and by reason of the Executive's employment with the Employer;
>
> (iii) whether for the Executive's own account or the account of any other person at any time during the Employment Period and the Post-Employment Period, (A) solicit, employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of the Employer at any time during the Employment Period or in any manner induce or attempt to induce any employee of the Employer to terminate his employment with the Employer; or (B) interfere with the Employer's relationship with any person, including any person

---

[2] Newman's Agreement referred to him as "the Executive," and his Agreement is quoted in this opinion; Medred's Agreement referred to him as "the Employee." In all other pertinent respects, the Agreements are substantially identical.

who at any time during the Employment Period was an employee, contractor, supplier, or customer of the Employer . . . .

Employment Agreements, § 8(b).

The Agreements defined "Employment Period" as "the term of the Executive's employment under this Agreement as set forth in § 2(b)." Employment Agreements, § 1. Section 2(b), in turn, stated:

> Subject to the provisions of § 6 [Termination], the term of the Executive's employment under this Agreement will be three (3) years, beginning on the Effective Date [September 19, 2011] and ending on the day before the third (3rd) anniversary of the Effective Date (the "*Termination Date*"). Thereafter this Agreement may be renewed for additional three-year terms at the Employer's option, subject to the agreement of the Executive, and the Termination Date will be automatically extended to the end of such renewal term.

*Id.* § 2(b). For purposes of the non-solicitation provisions, the "Post-Employment Period" began "on the last day of the Executive's employment by [Metalico]." *Id.* § 1. The length of the Post-Employment Period depended on the manner in which the Executive was terminated. **See id.** If the Executive was terminated for cause or voluntarily terminated his employment with Metalico "during or after the Employment Period," then the Post-Employment Period was two years. *Id.* §§ 1, 6(c), 6(e). If Metalico terminated the Executive without cause, the Post-Employment Period was one year. *Id.* §§ 1, 6(d).[3] The Employment Agreements also provided that,

---

[3] The definition of "Post-Employment Period" in Section 1 reads:

> "*Post-Employment Period*" means a period of time, determined as of and commencing on the last day of the Executive's

*(Footnote Continued Next Page)*

"[i]f the Executive's employment hereunder expires or is terminated, this Agreement will continue in full force and effect as is necessary or appropriate to enforce the covenants and agreements of the Executive in [§] 8," the section including the non-solicitation provisions. *Id.* § 9(b).

On September 4, 2014, Newman sent an e-mail to Arnie Graber, the General Counsel of Metalico's parent company, with copies to Medred, Carlos Agüero (President of Metalico), and another Metalico executive. The message began:

> As I am sure you are aware, both Ray [Medred] and I have contracts that expire on September 18th (two weeks from today). We are looking for clarity on what will happen on September 19th 2014. We are under the assumption from

*(Footnote Continued)* ————————————

employment by the Employer or any affiliate of the Employer, equal to:

(i)    For purposes of § 6(b) below [relating to termination upon disability], twelve (12) months commencing on the later to occur of (a) the Executive's date of termination and (b) the last date on which the Executive is issued a Disability insurance payment.

(ii)    For purposes of §§ 6(c) [relating to termination for cause], 6(e) [relating to voluntary termination], and 7(b) [relating to agreements regarding confidentiality and inventions] below, two (2) years.

(iii)    For purposes of § 6(d) below [relating to termination by Metalico without cause], one (1) year.

(iv)    For purposes of § 8(b) [relating to the non-solicitation provisions], the period set hereinabove forth for the subsection of § 6 applicable to the Executive's termination.

previous discussions that we will become employee[s] at will once the contracts expire.

Mot. for Partial Summ. J., Ex. 1.[4] Newman then asked about the effect of the contracts' expiration on his and Medred's salary, benefits, expenses, vacations and holidays, bonuses, and annual reviews. *Id.* That same day, Agüero responded, stating, in pertinent part:

We are aware that the 3 year agreement for both you and Ray matures on the 18th.

As I have mentioned before after the 18th you each become an employee at will.

I believe that you are both valued employees that make important contributions to the business and have the company's best interest at heart. Therefore it is our goal that you both continue to be employed by Metalico even though your preference is to not renew the 3 year agreements.

Mot. for Partial Summ. J., Ex. 1. Agüero then explained:

- Salary would not change, but raises would be discretionary, rather than contractual;

- Medical coverage would not change;

- Normal and ordinary business expenses would continue to be covered, but corporate credit cards may be eliminated and replaced by a reimbursement plan[5];

---

[4] The parties disagree as to who first suggested non-renewal of the Employment Agreements. That dispute, however, does not affect our resolution of this appeal.

[5] ARM and the Employees note that Metalico later discontinued Newman's vehicle allowance. Appellees' Brief at 11. However, this change did not occur until August or September of 2015. *See* Ex. 2 in Support of Mot. for Partial Summ. J. (Deposition of Kristen Kacik), at 123-24. ARM and the Employees cite the discontinuation as evidence of a change in benefits.

- Vacation days and holidays would not change;

- Bonuses would fall under the "IFCO"[6] formula that Metalico was moving towards for the entire company, but there could still be subjective or discretionary bonuses; and

- Contractual deferred stock grants would end with the agreement, but Medred and Newman would still be eligible to participate in the corporate pool of stock grants.

*Id.* This e-mail exchange did not contain any discussion of restrictive covenants.

The three-year terms of Newman and Medred under the Employment Agreements ended on September 18, 2014, and those terms were not renewed. However, both Newman and Medred continued to work for Metalico as employees at will, and they remained in that status until September 21, 2015, when their employment with Metalico ended.[7] Shortly thereafter, Newman and Medred began working for ARM, another scrap metal supplier.

Metalico alleges that once they began their employment with ARM, Newman and Medred solicited Metalico customers and employees to move to ARM. Accordingly, on October 28, 2015, Metalico initiated this action, in

---

[6] "IFCO" is not otherwise identified or defined in the record. Agüero explained that the formula was "based on profits of the Pittsburgh division" and did "not distinguish between ferrous and non-ferrous" results. Mot. for Partial Summ. J., Ex. 1.

[7] Newman and Medred claim they were terminated. Metalico contends that they resigned. As we later explain, this dispute is not material to our disposition of this appeal.

which it alleges, among other things, that Newman, Medred, and ARM tortiously interfered with Metalico's employee and customer contracts (Count V), and that Newman and Medred breached their Employment Agreements (Count VI). On January 14, 2016, Metalico filed a motion for a preliminary injunction to prohibit ARM, Newman, and Medred from contacting any of Metalico's previous or current customers, suppliers, and employees.

On January 19, 2016, the day before the trial court was scheduled to hold a hearing on the preliminary injunction, ARM, Newman, and Medred filed a motion for partial summary judgment with respect to Counts V and VI of Metalico's complaint. They contended that the non-solicitation provisions were unenforceable because the "Employment Agreements had expired in September 2014, more than a year prior to the termination of [Medred and Newman's] employment with [Metalico], and . . . by agreement of the parties, those Agreements were replaced with at will relationships that did not include non-solicitation provisions or any other restrictive covenants." Mot. for Partial Summ. J. at ¶ 3. In their supporting brief, the movants argued that "the parties' agreement to terminate the 2011 Employment Agreements and to replace them with new at will relationships effected novations of the 2011 Employment Agreements." Brief in Support of Mot. for Partial Summ. J. at 10.

After considering the parties' written submissions and oral arguments, the trial court granted the motion for partial summary judgment and denied Metalico's motion for a preliminary injunction as moot. The trial court's order

was dated January 20, 2016, and was entered on the docket on March 3, 2016.

The trial court issued an opinion on February 5, 2016, explaining its summary judgment ruling. The trial court reasoned that the Agreements explicitly stated that the consideration for the non-solicitation provisions was "the compensation and benefits to be paid or provided." Trial Ct. Op., 2/5/16, at 3. Thus, according to the trial court, when Metalico unilaterally and materially changed the compensation and benefits, consideration for the non-solicitation provisions failed. *Id.* The trial court further reasoned that when the Employment Agreements expired, Medred and Newman were terminated without cause. *Id.* at 4. Thereafter, "employment restarted . . . with none of the provisions of the Employment Agreements." *Id.* According to the trial court, the non-solicitation provisions continued in effect for one year after the purported termination without cause, that is, until August 2015. *Id.* Thus, they were no longer in effect when Employees allegedly solicited Metalico's customers, suppliers, and/or employees. *Id.*

On March 7, 2016, Metalico filed a Praecipe for Discontinuance with respect to all unresolved counts of the complaint. On March 8, 2016, Metalico filed its notice of appeal from the grant of partial summary judgment.

Metalico timely filed a Pa.R.A.P 1925(b) statement, raising the following issues: (1) the trial court erred by finding that the non-solicitation provisions were unenforceable for lack of consideration[8]; (2) the trial court erred by finding the non-solicitation provisions could be enforced for only one year after expiration of the Employment Agreements, rather than for two years after Medred and Newman resigned; (3) the trial court erred by resolving material issues of fact and inferences in favor of ARM and the Employees; and (4) the trial court erred by granting summary judgment to ARM and the Employees on grounds not raised by them in their motion and brief, without giving the parties an adequate opportunity to develop the record on summary judgment. Metalico's Pa.R.A.P. 1925(b) Statement, 3/21/16.

The trial court issued a Pa.R.A.P. 1925(a) opinion on June 30, 2016. The court reiterated its conclusions that (1) Metalico "changed the material terms of the agreement" when the Employment Agreements expired, and thus consideration for the non-solicitation provisions failed; and (2) when the Agreements were not renewed, "Newman and Medred's employment was terminated without cause given and replaced by a new at will employment under different, inconsistent terms." Trial Ct. Op., 6/30/16, at 7. The trial court further responded that it was not able to identify which material fact(s)

---

[8] Metalico broke this purported error into three listed issues, but all of them related to consideration.

Metalico thought it resolved, and it was not aware of any such facts. *Id.* at 8. Finally, the trial court rejected the claim that its rationale differed from the grounds raised in the motion for summary judgment:

> In their Brief in Support of Motion for Partial Summary Judgment, Newman and Medred argued that Metalico's agreement to terminate the 2011 Employment Agreements and to replace them with new at will relationships constituted novations that extinguished the terms of the non-solicitation covenants. Newman and Medred argued in their brief that one of the elements for a novation of a contract was the displacement and extinction of consideration. ***Buttonwood Farms, Inc. v. Carson***, 478 A.2d 484, 487 (Pa. Super. 1984), *citing* ***Yoder v. T.F. Scholes, Inc.***, 173 A.2d 120, 121-22 (Pa. 1961). We agreed and found that because Metalico disavowed its obligation to continue to provide the benefits to Newman and Medred under the Employment Agreements, the non-solicitation covenants failed for lack of consideration.

*Id.* at 8-9.

In this appeal, Metalico raises the following issues, as stated in its brief:

> Did the Trial Court err, as a matter of law, by holding that the non-solicitation covenants in the employment agreements of Newman and Medred, which were supported by adequate consideration when Newman and Medred were first hired, subsequently became unenforceable for lack of consideration merely because the employment agreements expired and Newman and Medred continued as at-will employees?

> Did the Trial Court err, as a matter of law, in granting summary judgment . . . by resolving material disputes of facts and inferences in favor of [ARM and the Employees] and against Metalico when it found there were material changes to the employment of Newman and Medred after they became at-will employees?

- 10 -

J-A33020-16

Metalico's Brief at 8-9.[9]

Our standard of review for a trial court's order granting summary judgment is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Socko v. Mid-Atl. Sys. of CPA, Inc.*, 99 A.3d 928, 930 (Pa. Super. 2014) (citation omitted), *aff'd*, 126 A.3d 1266 (Pa. 2015).

In its first issue, Metalico argues that the trial court erred in finding that consideration for the non-solicitation provisions failed. The Supreme Court of Pennsylvania has stated:

[I]n Pennsylvania, restrictive covenants are enforceable only if they are: (1) ancillary to an employment relationship between

---

[9] Metalico has also filed an application to amend the reproduced record. We grant that application.

- 11 -

an employee and an employer; (2) supported by adequate consideration; (3) the restrictions are reasonably limited in duration and geographic extent; and (4) the restrictions are designed to protect the legitimate interests of the employer.

*Socko*, 126 A.3d at 1274. The only one of these elements at issue in this appeal is the second: whether the non-solicitation provisions in the Employment Agreements were supported by adequate consideration.

As the trial court recognized, "under Pennsylvania law, adequate consideration is found where a restrictive covenant is signed as part of the initial employment relationship." Trial Ct. Op., 6/30/16, at 6 (citing *Pulse Techs., Inc. v. Notaro*, 67 A.3d 778, 781 (Pa. 2013)). Further, "it is possible for a non-solicitation covenant to survive the end of a term of an employment contract, when the employee stays on as an at-will employee." Trial Ct. Op., 6/30/16, at 6-7 (citing *Boyce v. Smith-Edwards-Dunlap Co.*, 580 A.2d 1382 (Pa. Super. 1990), *appeal denied*, 593 A.2d 413 (Pa. 1991)).

In *Boyce*, the employer and employee entered into a three-year contract with restrictive covenants that applied "both during and for a two-year period after the period of [the employee's] employment by Employer . . . (whether pursuant to this Agreement or otherwise)." *Boyce*, 580 A.2d at 1384. The contract also stated, "It is expressly understood by the parties to this Agreement that certain provisions, rights and obligations pursuant to this Agreement, are expressly meant to survive the termination date of this Agreement and shall be given full effect pursuant to their terms." *Id.* After the contract expired, Boyce continued to work for the employer for more

than two years, and then began working for a competitor. *Id.* at 1385. In the ensuing litigation, Boyce claimed that he was no longer bound by the restrictive covenants because they expired two years after his contract expired. *Id.* at 1387. This Court disagreed, holding that under the terms of the contract, Boyce was bound by the covenants for two years following his employment, "whether pursuant to this Agreement or otherwise." *Id.*

The trial court concluded that this case differs from *Boyce* because here, "employment did not continue as before. Rather, Metalico changed the material terms of the agreement" because it employed Newman and Medred as employees at will under different terms than those that had applied during their three-year term under the Employment Agreements. Trial Ct. Op., 6/30/16, at 7; *see also* Appellees' Brief at 28-29. We disagree. In *Boyce*, this Court did not hold that application of the restrictive covenants depended on whether the terms of employment continued as before or materially changed. Rather, in holding that Boyce was bound by the restrictive covenants in his employment contract while working for the employer after the contract expired, we relied only on the explicit language in the contract. Thus, *Boyce* does not support the trial court's rationale.

The language of the Metalico Employment Agreements anticipated three relevant time periods when Newman and Medred would be subject to the restrictive covenants. *First*, they would be subject to the covenants during the three-year terms of their employment under the Agreements, as well as during any renewal of those terms. *See* Employment Agreements,

- 13 -

§§ 8(b) (making the covenants applicable during the "Employment Period"), 1 & 2(b) (defining "Employment Period" to mean three-year term plus any renewals). **Second**, they would be subject to the covenants during any continued employment with Metalico after expiration of their terms under the Employment Agreements, at the time when they were employees at will. **See id.** § 9(b) (if employment under the Agreement "expires," the Agreement continues in effect "as is necessary or appropriate to enforce" the covenants in Section 8).[10] **Third**, they would be subject to the covenants for one or two years after they left Metalico's employment, depending on the reason why they left. **See id.** § 8(b)(ii), (iii) (providing that the relevant covenants apply during the "Post-Employment Period"), 1 (defining the "Post-Employment Period" as a time running one or two years from "the last day of the Executive's employment by the Employer"). **See also id.** § 9(b) (Agreement continues in effect for enforcement of covenants after employment expires or is terminated).[11] Notably, this period runs from the "last day of the Executive's employment by the Employer" (thus including

_____

[10] Employment under the Agreements would expire when the three-year term ended. **See** Employment Agreements, § 2(b). The Agreements contemplated, however, that employment could continue after expiration of the Agreements' terms. **See**, **e.g.**, **id.** § 6(e)(1) (discussing voluntary termination "after the Employment Period").

[11] Because both Newman and Medred are accused of violating the covenants within one year of leaving employment by Metalico, it is not necessary here to determine whether the one- or two-year period is applicable.

the time of employment at will), and not from the date when the three-year term of employment under the Employment Agreements ended. *See id.* §§ 1, 2(b) (defining "Post-Employment Period" and "Termination Date").[12]

In sum, the specific language of the Employment Agreements made the restrictive covenants apply to Newman and Medred both throughout the time of their employment by Metalico and in the relevant time at issue here after they left Metalico's employ. Indeed, this case resembles *Boyce*, 580 A.2d at 1384, in that, like the contract in *Boyce*, the Metalico Employment Agreements contain a special provision, Section 9(b), that reinforces the fact that the non-solicitation covenants survive termination of the contract. We find this language controlling. *See generally Synthes USA Sales, LLC v. Harrison*, 83 A.3d 242, 250 (Pa. Super. 2013) ("In construing a restrictive covenant, 'courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed'" (citations and brackets omitted)). Therefore, under *Boyce*, Newman and Medred were subject to the covenants' terms.

The trial court held, however, that the Employees' transition to at-will employment following the end of their three-year contract terms wiped away

---

[12] The Agreements also provided for extension of the period of the covenants' coverage. *See* Employment Agreements § 8(b) (penultimate paragraph) ("The period of time applicable to any covenant in this § 8(b) will be extended by the duration of any violation by the Executive of such covenant . . .").

- 15 -

the restrictive covenants because such covenants were not specific terms of the at-will employment relationship. Trial Ct. Op., 2/5/16, at 3-4. Without explicitly holding that a novation had occurred,[13] the trial court, citing **Buttonwood Farms**, 478 A.2d at 487, stated that "one of the elements for a novation of a contract [is] the displacement and extinction of consideration." Trial Ct. Op., 6/30/16, at 9. In the trial court's view, the fact that the compensation and benefits under the at-will arrangement were different from the terms of the Employment Agreements meant that the consideration for the restrictive covenants failed. In the trial court's words, "Metalico's failure to continue the compensation and benefits provided under the contract invalidated the non-solicitation clause. Metalico cannot claim the benefit of its bargain while denying its employees the same." **Id.** at 7. Once again, we disagree.

The Metalico Employment Agreements set forth the restrictive covenants in Section 8(b) and, under Sections 8(b) and 9(b), made them applicable both after the Agreements' expiration and during a one- or two-year "Post-Employment Period." They recited that the Employees agreed to those covenants "in consideration of the compensation and benefits to be paid or provided by the Employer." Employment Agreements § 8(b). There is no dispute that Metalico paid that compensation and those benefits to

---

[13] ARM and the Employees acknowledge that the trial court "did not base its decision on a finding that a novation had occurred." Appellees' Brief at 26.

Newman and Medred throughout the Agreements' three-year terms. Therefore, contrary to the trial court's decision, there was no failure of consideration. "Failure of consideration . . . shows that the consideration contemplated was never received." *McGuire v. Schneider, Inc.*, 534 A.2d 115, 1119 (Pa. Super. 1987), *aff'd*, 548 A.2d 1223 (Pa. 1988). Here, Newman and Medred received the consideration they were promised in the Agreements, and, in return, they continue to be bound by the Agreements' restrictive covenants for the full period — both after the expiration of their three-year terms, and after their at-will employment — during which they agreed to be bound under Sections 8(b) and 9(b). Newman and Medred specifically acknowledged the importance of the non-competition provisions to Metalico, *see* Employment Agreements, § 8(a), 9(b), and the contention that these essential terms would evaporate merely because Metalico agreed to retain Newman and Medred on its payroll under a different contractual arrangement once the three-year Agreements expired is unsupported by anything in the Agreements or the parties' employment relationship.

The trial court's reliance on **Buttonwood Farms** was misplaced. In **Buttonwood Farms**, this Court explained:

> The required essentials of a novation are the displacement and extinction of a valid contract, the substitution for it of a valid new contract, a sufficient legal consideration for the new contract, and the consent of the parties. The party asserting a novation or substituted contract has the burden of proving that the parties intended to discharge the earlier contract.

478 A.2d at 486 (citations, quotation marks, ellipsis, and italics removed). A novation, or substituted agreement, extinguishes all rights and duties under the earlier agreement. *Id.* However, contrary to the trial court's opinion, "the displacement and extinction of consideration" is not one of the elements of a novation. *See id.* Because the trial court did not find that all elements of a novation were present, *Buttonwood Farms* does not apply here. The trial court cites no other authority for its holding.

In their brief, ARM and the Employees rely on *Innoviant Pharm. Inc. v. Morganstern*, 390 F. Supp. 2d 179 (N.D.N.Y. 2005) (applying Pennsylvania law), but *Innoviant* is factually distinguishable from this case.[14] In *Innoviant*, Morganstern signed an employment agreement with restrictive covenants. *Id.* at 184. Approximately two years later, the employer required Morganstern to sign a written document acknowledging that he had no employment contract with the employer. *Id.* at 185. After Morganstern resigned the next year, the District Court held that the restrictive covenants were not enforceable. *Id.* at 193. The court acknowledged that, "under Pennsylvania law an intent to terminate a

---

[14] *Innoviant* is not binding on this Court. *See Branham v. Rohm and Haas Co.*, 19 A.3d 1094, 1103 (Pa. Super. 2011) ("This Court is not bound by the decisions of federal courts, other than the United States Supreme Court, . . . on a matter of Pennsylvania law"), *appeal denied*, 42 A.3d 289 (Pa. 2012). We also do not find Appellees' reliance on numerous cases from other jurisdictions that do not apply Pennsylvania law to be helpful in resolving the issues in this appeal.

contractual agreement must be mutual, and demonstrated by clear, precise and convincing evidence that the parties agree to terminate the contract." *Id.* (quotation marks and citations omitted). The court found that the parties' intent to reform the contract was clear because (1) the employer required Morganstern to sign a document acknowledging the non-existence of any employment contract; and (2) Morganstern signed it. *Id.* Here, unlike in *Innoviant*, Medred and Newman never signed a document disavowing the Employment Agreements and they never were asked to do so. Therefore, *Innoviant* is inapposite.

In sum, we hold that the trial court erred in finding that the non-solicitation provisions were not applicable because there was a failure of consideration with respect to them. We therefore reverse the trial court's order granting summary judgment in favor of ARM and the Employees.[15]

Application to amend the reproduced record granted. Order reversed. Case remanded. Jurisdiction relinquished.

---

[15] As we reverse on the basis of Metalico's first issue, we need not address its second.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/19/2017