Gilbert and Lois **GOLDSTEIN**,
Appellants,

v.

**PHILLIP MORRIS, INCORPORATED,**
Appellee.

Superior Court of Pennsylvania.

Argued Oct. 28, 2003.
Filed July 9, 2004.

Sherri L. Eyer, Philadelphia, for appellants.

Joseph K. Hetrick, Philadelphia, for appellee.

Before: DEL SOLE, P.J., HUDOCK and TODD, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 Gilbert and Lois Goldstein appeal from the orders granting summary judgment in favor of Philip Morris, Incorporated (PMI). Upon review, we affirm.

¶ 2 The Goldsteins filed this products liability case on July 25, 2000. Gilbert Goldstein was diagnosed with lung cancer after more than thirty years of smoking PMI's cigarettes. In their Complaint, Appellants assert causes of action in strict liability, negligence and conspiracy. The strict liability and negligence claims were based on theories of both inadequate warnings and design defect. In their civil conspiracy claim, Appellants allege that PMI conspired with other cigarette manufacturers to knowingly market a deadly, defective product, while concealing from the public the risks attendant to its use.

¶ 3 PMI filed three motions for summary judgment in response to Appellants' claims, and a motion to strike portions of the affidavits of the Appellants' expert witness, Allan Feingold, M.D. The trial court granted PMI's motions for summary judg-

ment and their motion to strike portions of the affidavit. As a result, Appellants' complaint was dismissed in its entirety. Appellants timely appealed the court's orders.

¶ 4 On appeal, Appellants present the following issues for our review:

I. Did the lower court err in finding as a matter of law that the record evidence demonstrated that Plaintiff, if given an adequate warning of the health hazards associated with the use of Defendant's Marlboro cigarettes, would not have heeded them?

II. Did the lower court err in granting Defendant's motion to strike the affidavits of Plaintiff's expert witness, Dr. Allan Feingold, especially without a hearing thereon?

III. Did the lower court improperly dismiss Plaintiffs' design defect claims on the basis of Comment I of the Restatement (Second) of Torts and applicable Pennsylvania authority, especially where Plaintiffs produced evidence of a feasible alternative design for cigarettes, which is not even a necessary element of a design defect case?

IV. Did the lower court err in dismissing Plaintiff's civil conspiracy claim and improperly requiring Plaintiffs to produce evidence of an underlying criminal act or intentional tort and further, in finding that Plaintiff's evidence did not establish the element of malice?

Appellants' Brief at 4.

¶ 5 Our scope of review in an appeal from summary judgment is plenary. *Lange v. Burd,* 800 A.2d 336, 338 (Pa.Super.2002). We must view the record in the light most favorable to the non-moving party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *Id.* (quoting from *Davis v. Resources for Human Dev., Inc.,* 770 A.2d 353, 356–357 (Pa.Super.2001)).

¶ 6 First Appellants argue that the trial court erred in dismissing Appellants' pre-July 1, 1969, failure to warn claims. Appellants' Brief at 12. Appellants maintain that this Court has adopted the heeding presumption in failure to warn cases. *Id.* at 13. Appellants assert that with regard to this presumption, in cases that involve the lack of warnings or inadequate warnings, a presumption arises that the plaintiff would have followed an adequate warning. *Id.* Accordingly, Appellants assert that only after defendant has produced evidence that the injured plaintiff was aware of the risk of bodily injury, or to the extent to which his conduct could contribute to that risk, is the presumption rebutted. *Id.* at 13–14. Here, Appellants maintain, no record evidence sufficiently rebutted this presumption. *Id.* at 14. Specifically, Appellants contend that Gilbert Goldstein was not fully aware of the risk of bodily injury and addiction. *Id.*

¶ 7 We first note that this Court recently has had occasion to address this issue in a case very similar to the one *sub judice.* In *Viguers v. Philip Morris USA Inc.,* 837 A.2d 534 (Pa.Super.2003), we held that while the heeding presumption has been authorized in asbestos cases in Pennsylvania,[1] it does not apply in the context of this case, which involves the voluntary choice of a smoker to begin and continue smoking tobacco. *Viguers,* 837 A.2d at 538.

¶ 8 But even assuming *arguendo* that the presumption applies in this case, we agree with the trial court that the presumption was rebutted by uncontradicted evidence that Gilbert Goldstein

---

1. *See Coward v. Owens–Corning Fiberglas Corp.* 729 A.2d 614, 621 (Pa.Super.1999); *Lonasco v. A–Best Products Co.,* 757 A.2d 367 (Pa.Super.2000).

would not have heeded a warning had it been given prior to 1969.

Accordingly, if the defendant produces evidence that the injured plaintiff was "fully aware of the risk of bodily injury, or the extent to which his conduct could contribute to that risk," then the presumption is rebutted and the burden of production shifts back to the plaintiff to produce evidence that he would have acted to avoid the underlying hazard had the defendant provided an adequate warning.

*Coward v. Owens–Corning Fiberglas Corp.* 729 A.2d 614, 622 (Pa.Super.1999). In order to rebut the heeding presumption, the defendant need only produce evidence "sufficient to support a finding contrary to the presumed fact." *Coward,* 729 A.2d at 621.

¶ 9 In this case, the record contained evidence that Gilbert Goldstein continued smoking long after federally-mandated warnings of the dangers of cigarette smoking appeared on packages in 1969. Indeed, he did not quit smoking until 1992. The trial court correctly held that this evidence adequately rebutted any presumption that Gilbert would have quit smoking if PMI had earlier warned of the dangers of its product. The burden of proof then shifted back to Appellants to show that warnings would have changed Gilbert's behavior, and we affirm the trial court's decision that Appellants did not produce evidence to meet this burden as a matter of law.

■ ¶ 10 Next, Appellants argue that the trial court erred in striking the affidavit, and paragraphs 2, 3, 4, and 7 of the supplemental affidavit, of their expert witness, Dr. Allan Feingold. Appellants' Brief at 19. Dr. Feingold's affidavit was intended to provide evidence that would allow Appellants to carry their burden of proof on the strict liability claim. Fein-

gold would have testified in pertinent part that: 1) Cigarettes sold under the brand name Marlboro are defective and unreasonably dangerous because they deliver excessive amounts of carcinogens and other harmful ingredients, they are engineered for inhalation, and they deliver harmful and addictive quantities of nicotine; 2) medical literature contains abundant references to the various methods that were available to PMI to reduce its cigarettes' harmful potential; and 3) reduced hazard products were feasibly designed and sold. *Id.* at 22.

¶ 11 In *Viguers,* this Court addressed an identical issue involving Dr. Feingold. In *Viguers,* Dr. Feingold's proposed testimony was almost identical to the proposed testimony in the case *sub judice.* In *Viguers,* we held that Feingold was not qualified to give his opinion regarding the defective design of PMI's cigarettes and the feasibility of safer cigarette alternatives because he had no expertise in the design and manufacture of cigarettes. *Viguers,* 837 A.2d at 539–540. We note that there is no indication that Dr. Feingold's experience has changed since the holding in *Viguers.* Thus, we conclude that Feingold is not qualified to give his opinion on the defective design of PMI's cigarettes and the feasibility of safer cigarette alternatives. The trial court did not err in granting PMI's motion to strike Feingold's affidavit and certain paragraphs of his supplemental affidavit.

■ ¶ 12 Appellants next argue that the trial court erred in concluding that Appellants' design defect claims were based on the inherent qualities of tobacco. Appellants' Brief at 26. Consequently, Appellants maintain, the trial court erroneously dismissed Appellants' design defect claims. *Id.* Appellants also argue that *Hite, Gunsalus,* and *Miller* do not apply, because unlike the Appellants in those cases, Ap-

pellants here have identified specific defects in Marlboro cigarettes. *Id.* at 31–34.

¶ 13 In *Hite v. R.J. Reynolds Tobacco Co.*, 396 Pa.Super. 82, 578 A.2d 417 (1990), this Court rejected claims that cigarette companies could be held liable merely for manufacturing a legal and regulated product with inherent risks. In dismissing appellant's design defect claim, this Court explained:

> Section 402A recognizes liability without fault and properly limits such liability to defective products. The seller of a product is not responsible for harm caused by such inherently dangerous products as whiskey or knives that despite perfection in manufacture, design or distribution, can cause injury.

*Hite*, 578 A.2d at 420. In considering the merits of appellant's design defect claim in *Hite*, we held:

> Appellant in the instant case does not contend that a better design is available for the cigarette company's product. She contends only that appellee's product is so inherently dangerous that the manufacturer should be made liable for the mischief it causes. She would accomplish this by applying the risk-utility approach to design defect cases. Thus far, however, the Pennsylvania courts have resisted such an approach in design defect cases.... the risk of loss will not be placed on the supplier or manufacturer where an inherent danger is within the contemplation of the buyer, i.e., where there is no element which will remove the risks inherent in its intended use.

*Hite*, 578 A.2d at 421

¶ 14 The federal courts have recognized the Pennsylvania Supreme Court's refusal to embrace the risk-utility analysis and have held that cigarette claims based upon such an approach are not cognizable in Pennsylvania. *See Miller v. Brown & Williamson Tobacco Corp.* 679 F.Supp. 485 (E.D.Pa.1988) (under Pennsylvania law the risk-utility theory of liability was inapplicable and, therefore, an action against a cigarette manufacturer for death caused by cigarette smoking on grounds that cigarettes gave no benefit to society but imposed great risk could not be maintained); *Gunsalus v. Celotex Corp.*, 674 F.Supp. 1149 (E.D.Pa.1987) (tobacco was not *per se* a "defective" product merely because it caused or increased the risk of lung cancer and other life threatening diseases).

¶ 15 As we noted earlier, Dr. Feingold's affidavit and parts of his supplemental affidavits were properly struck by the trial court. Thus, the Appellant had no means of establishing alleged specific defects in the cigarettes.

¶ 16 Moreover, as referenced earlier, Dr. Feingold, if permitted, would have testified that: 1) cigarettes sold under the brand name Marlboro are defective and unreasonably dangerous because they deliver excessive amounts of carcinogens and other harmful ingredients, they are engineered for inhalation, and they deliver harmful and addictive quantities of nicotine; 2) medical literature contains abundant references to the various methods that were available to PMI to reduce its cigarettes' harmful potential; and 3) reduced hazard products were feasibly designed and sold. The defects identified by Dr. Feingold are nothing more than a recitation of the inherent and known risks associated with smoking any cigarette.

¶ 17 Additionally, Appellants attempt to circumvent the holding of *Hite*, and its progeny, by asserting that a better design was available. Appellants' Brief at 41. Appellants, however, failed to establish that these alternatives were technically feasible from 1960 through 1992, the time during which Gilbert smoked, that they

were commercially feasible, or that they were in fact safer than conventional cigarettes. With regard to the non-combustible cigarettes that Appellants cite to: this is not evidence of a better design. If these cigarettes were in fact manufactured at some point, they were not the same product, and cannot be argued to be a better design of the cigarettes Gilbert was smoking. The fact that these cigarettes were not the same product, and therefore could not be characterized as a better design, is evidenced by their existence and Gilbert's refusal to smoke them. Thus, we find Appellants' argument that this case is not controlled by the precedent of *Hite, Gunsalus* and *Miller* to be unpersuasive. We find no error in the trial court's dismissal of Appellants' claims.

¶ 18 Additionally, we find absolutely no merit to Appellants' claim that comment i of the Restatement of Torts, § 402A, has never been adopted by the Pennsylvania Supreme Court as precedent and that comment i is inapplicable here. On the contrary, we find that Pennsylvania courts have unflinchingly affirmed the mandates provided by section 402A and its accompanying comments. *See Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020 (1978) (employing 402A and comment i to determine whether product was defective); *Hite v. R.J. Reynolds Tobacco Co.,* 396 Pa.Super. 82, 578 A.2d 417 (1990) (discussing the applicability of a risk/utility analysis in a 402A action with regard to cigarettes); *Lewis v. Coffing Hoist Div., Duff–Norton Co.,* 515 Pa. 334, 528 A.2d 590 (1987) (discussing whether evidence of industry standards is properly admissible in a 402A action).

■ ¶ 19 Finally, Appellants argue that the trial court erred in dismissing their civil conspiracy claim. Appellants' Brief at 42. Appellants maintain that they established all necessary elements for such a claim. *Id.*

■ ¶ 20 In order to state a civil action for conspiracy, a complaint must allege: 1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage. *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 660 (Pa.Super.2000). Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman,* 751 A.2d at 660. Proof of malice is an essential part of a cause of action for conspiracy. *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973, 980 (1985). "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Burnside,* 505 A.2d at 980.

¶ 21 In the case *sub judice,* the Appellants have failed to plead or develop any separate underlying intentional or criminal act that can support a civil conspiracy claim. Strict liability and negligence counts are insufficient to support their civil conspiracy claim. *See Burnside v. Abbott Labs.,* 351 Pa.Super. 264, 505 A.2d 973, 980–982 (1986). Thus, this claim could be dismissed on this basis alone.

■ ¶ 22 If Appellants' Complaint was construed to allege fraud, we find this claim would still fail.[2] To recover on a claim of fraud, the plaintiff must prove by clear and convincing evidence six elements:

---

**2.** Although Appellants do not set forth a separately named count for "fraud," the facts enumerated in the civil conspiracy claim do describe alleged incidents of misrepresentation, false statements, omissions and suppressions, upon which Gilbert allegedly relied.

1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance. *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa.Super.2002) (citations omitted).

¶ 23 As discussed previously, Appellants did not make out their case that a failure to warn (even a fraudulent failure to warn), or that a defectively designed cigarette (even fraudulently designed), caused Gilbert's cancer. We therefore find no error in the trial court's decision to dismiss the conspiracy claim.

¶ 24 Orders affirmed.