PNC Bank v. PECO Energy Co.

C.P. of Montgomery County, no. 06-14594.

*Craig E. Ziegler*, for plaintiffs.
*Mark C. Clemm*, for defendants.

## I. FACTS AND PROCEDURAL HISTORY

*MOORE, J.,* June 11, 2010—PNC Bank, N.A. and Mervin J. Hartman, executors of the will of Elizabeth Gordon Geasland, deceased (hereinafter "the plaintiffs") have appealed from this court's December 16, 2009, order finding in favor of PECO Energy Company and Bart Levy (hereinafter "the defendants") and against the plaintiffs in a bench trial.

The defendant Bart Levy purchased a parcel of real estate in Whitemarsh Township, Montgomery County, in December 1999 (hereinafter "the Levy property"). (NT, 12/15/09, p. 149). This property was adjacent to parcels of real property owned by defendant PECO Energy Company (hereinafter "the PECO Property") and Frederick and Elizabeth Gordon Geasland (hereinafter "the plaintiffs' property"). (NT, 12/15/09, pp. 131-132).

The Levy property did not initially have direct access

to or from any public roadway. (NT, 12/15/09, pp. 149-150). At the time of Levy's purchase of the land, the Levy property could only be accessed via a private road shared by a number of residents in the area. (NT, 12/15/09, pp. 152-153). On March 14, 2001, Levy obtained a license to use a driveway located on the PECO property which provided direct access from his property to the nearest public roadway. (NT, 12/15/09, p. 150).

This driveway was originally constructed by the Geaslands to provide direct access from their property to the nearest public roadway. (NT, 12/14/09, pp. 179-182). PECO permitted the Geaslands to construct the driveway across the PECO property per the terms of a revocable license, which was non-transferable and was terminable by either party upon thirty-days notice. (NT, 12/15/09, p. 165-167). The Geaslands' license did not provide them with a right of first refusal or option to purchase the tract of land upon which the driveway was built.

After purchasing his property, Levy realized that a portion of his out-buildings and the well which supplied his drinking water were located on the PECO property. (NT, 12/14/09, p. 224). Levy became concerned that this might affect the value of his property. (NT, 12/14/09, p. 224). Levy also wanted to ensure that his property had access to the public road via the driveway. (NT, 12/15/09, pp. 152-153). As a result, Levy began negotiations with PECO to purchase the portion of the PECO property containing his out-buildings, well and driveway access to the public road. (NT, 12/15/09, pp. 153-154).

Starting on March 26, 2003, and continuing into February 2004, Levy regularly contacted representatives

of PECO in an effort to purchase the PECO property. (NT, 12/14/09, pp. 225-237). PECO entered into negotiations for the sale of a portion of its land with Levy after becoming concerned that Levy would pursue costly litigation against PECO in an effort to resolve his property issues. (NT, 12/15/09, pp. 161-162). The Geaslands were aware of PECO's negotiations with Levy and had advised PECO that it would be interested in purchasing the property; however, the Geaslands never made a formal offer. (NT, 12/14/09, p. 58).

On February 24, 2006, after approximately two-years of negotiations, Levy and PECO entered into an agreement of sale for the purchase of the portion of the PECO property containing Levy's out-buildings, well and driveway access to the public road. (NT, 12/15/09, pp. 161-162). The agreement of sale, and ultimately the deed conveying the PECO property to Levy, provided for and granted an easement which permits the owners of the plaintiffs' property unobstructed access to the driveway so long as they only use it to gain access to a single residence. (NT, 12/15/09, p. 165). The purpose of this easement was to protect the Geaslands' access to their property from the driveway where they previously owned a mere revocable license. (NT, 12/15/09, p. 165). The language of the easement also sought to protect Levy in the event the Geaslands or their successors attempted to further develop their property, which could affect the value of the Levy property. (NT, 12/15/09, p. 167).

On October 12, 2006, the plaintiffs filed a complaint against Levy and PECO containing a single count alleging a civil conspiracy between the defendants. A bench trial was held before this court on December 14 and 15, 2009.

Based upon the evidence presented at trial, this court found in favor of the defendants and against the plaintiffs. The plaintiffs filed post-trial motions which this court denied by an order dated March 31, 2010. The plaintiffs are now appealing this court's findings in the bench trial, claiming that the judgment was against the weight of the evidence and that this court capriciously disregarded the evidence.

## II. DISCUSSION

This court, sitting as the trier of fact in a bench trial, is the sole judge of credibility and conflicts in the evidence. *Miller v. Brass Rail Tavern Inc.*, 702 A.2d 1072, 1076 (Pa. Super. Ct. 1997). On an appeal of a bench trial's judgment, all evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict winner. *Rizzo v. Haines*, 520 Pa. 484, 492, 555 A.2d 58, 61 (Pa. 1989). The findings of the trial court will only be overturned on appeal if there is insufficient evidence or if the trial court committed an error of law. *Id.* The plaintiffs do not allege any legal error by this court in the bench trial. Moreover, this court as the trier of fact is to determine credibility and resolve conflicts in the evidence.

The plaintiffs simply did not present sufficient evidence to establish a claim for civil conspiracy. The elements necessary to support a claim for civil conspiracy are as follows:

(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;

(2) an overt act done in pursuance of the common

purpose; and

(3) actual legal damage.

*Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008); *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004), proof of malice or an intent to injure absent justification is essential to a claim for civil conspiracy. *Miller v. Post Publishing Co.*, 110 A. 265 (Pa. 1920).

In *Rosenblum v. Rosenblum*, 181 A. 583, 585 (Pa. 1935), the Pennsylvania Supreme Court stated the test in a suit for civil conspiracy:

> Assume that what is done is intentional, and that it is calculated to do harm to others. Then comes the question, was it done with or without "just cause or excuse"? If it is bona fide done in the use of a man's own property such legal justification would exist not the less because what was done might seem to others to be selfish or unreasonable. But such legal justification would not exist when the act was merely done with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights.

Furthermore, proof of a conspiracy must be made by full, clear and satisfactory evidence. *Phillips*, 959 A.2d at 437. "The mere fact that several parties happened to exercise independent rights at or about the same time does not constitute an actionable conspiracy." *Fife v. Great Atlantic & Pacific Tea Co.*, 52 A.2d 24, 39 (Pa. 1947). "Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit

that act." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987)).

The plaintiffs failed to prove that the defendants engaged in any unlawful activity or engaged in lawful activity by unlawful means or with an unlawful purpose. The plaintiffs claimed that PECO and Levy conspired and acted for the unlawful purpose of causing harm to the plaintiffs' estate by depriving the plaintiffs of their previous unrestricted access to a public road. The evidence presented at trial, however, established that PECO and Levy entered into a contract for the sale of real property which was owned by PECO. (NT, 12/14/09, p. 224). Two parties entering into a contract for the sale of land owned by one of the parties is not an unlawful action, even if the result of the contract is a decrease in the value of a neighbor's property. See *Fife*, 52 A.2d 24. Plaintiffs' counsel conceded this point during trial. (NT, 12/15/09, p. 162).

Further, the plaintiffs presented no evidence that PECO and Levy entered into a contract for the sale of the PECO property through unlawful means or with an unlawful purpose. PECO has the legal right to sell its property to whomever it chooses. An officer for PECO established that PECO did not give Levy any special consideration or treat him any different from other potential buyers of PECO property. (NT, 12/15/09, p. 162). From March 2003 to February 2004, Levy regularly contacted PECO representatives in an attempt to purchase the PECO property. (NT, 12/14/09, pp. 237). The agreement of sale went through multiple levels of internal review over the course of more than two years of negotiations, and Levy

ultimately paid more than the highest appraised value for the PECO property. (NT, 12/15/09, pp. 157-162). Levy was also required to pay for the appraisal of the PECO property and the legal and engineering costs necessary to subdivide the PECO property. (NT, 12/15/09, pp. 153-154). The evidence presented at trial demonstrated that, in all aspects of the sale of the PECO property, PECO and Levy engaged in legal activity by legal means and with a legal purpose.

Furthermore, the plaintiffs failed to prove that PECO and Levy intended to injure the plaintiffs through the sale of the PECO property. Proof of malice or an intent to injure absent justification is an essential element of proof of a conspiracy. See *Miller*, 110 A. at 266; *Miller v. Harvey*, 64 A. 330 (Pa. 1906); *Irvine v. Elliot*, 55 A. 859 (Pa. 1903). Levy sought to purchase the property to enhance the value of his own land and to ensure he maintained direct access to the public road. (NT, 12/14/09, p. 224).

Even if the plaintiffs had introduced evidence that Levy intended to injure them, there was no evidence that PECO acted with malice. Throughout the trial, representatives for PECO established that they made sure the sale of the PECO property did not interrupt the plaintiffs' access to its property, which was accomplished by providing the easement for the benefit of the plaintiffs' property. (NT, 12/15/09, pp. 165, 168). This easement, which was a permanent right of access which runs with the land, is a far superior right than the prior license agreement which was terminable by PECO on thirty-days notice for any or no reason. Ultimately, PECO's intentions in selling the PECO property were based on legitimate business decisions, including the threat of legal action by Levy. (NT,

112

12/15/09, pp. 161-162). Clearly, the evidence presented at trial shows that neither PECO nor Levy had any intention of injuring the plaintiffs through the sale of the PECO property.

Moreover, the plaintiffs failed to prove that they suffered any damages as a result of the sale of the PECO property to Levy. In order to establish a claim for civil conspiracy, a plaintiff must prove it suffered legal damages as a result of the defendant's actions. *Phillips*, 959 A.2d at 437. The plaintiffs argued that they suffered a decrease in the value of their property because the sale of the PECO property caused the plaintiffs to lose their unrestricted access to a public road.

The evidence presented at trial established that the plaintiffs actually benefitted from the sale of the PECO property. Prior to the sale of the PECO property, it is unclear whether the plaintiffs had any legitimate right to the use of the driveway. At best, the plaintiffs held a license to use the driveway in order to access their property. This license was fully revocable upon thirty-days notice. (NT, 12/15/09, p. 165-167). As a result of the sale of the PECO property, the plaintiffs' property became the dominant estate in connection with an easement for the use of the driveway, a far greater right than the plaintiffs' previous revocable license.

### III. CONCLUSION

Based upon the foregoing analysis, this court's determination was proper and should be affirmed.