J-A12005-20

2021 PA Super 87

| | | |
|---|---|---|
| THE BERT COMPANY D/B/A NORTHWEST INSURANCE SERVICES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW TURK, WILLIAM COLLINS, JAMIE HEYNES, DAVID MCDONNELL, FIRST NATIONAL INSURANCE AGENCY, LLC, FIRST NATIONAL BANK, AND FNB CORPORATION | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MATTHEW TURK, FIRST NATIONAL INSURANCE AGENCY, LLC, FIRST NATIONAL BANK, AND FNB CORPORATION | : | No. 817 WDA 2019 |
| | : | |
| | : | |
| | : | |

Appeal from Judgment Entered June 3, 2019
In the Court of Common Pleas of Warren County Civil Division at No(s):
AD 260 of 2017

| | | |
|---|---|---|
| THE BERT COMPANY D/B/A NORTHWEST INSURANCE SERVICES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW TURK, WILLIAM COLLINS, JAMIE HEYNES, DAVID MCDONNELL, FIRST NATIONAL INSURANCE AGENCY, LLC, FIRST NATIONAL BANK AND FNB CORPORATION | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| --------------------- | : | |
| | : | No. 975 WDA 2019 |
| MATTHEW TURK | : | |
| | : | |
| v. | : | |

|   |   |   |
|---|---|---|
| | : | |
| THE BERT COMPANY, NORTHWEST | : | |
| BANK, AND NORTHWEST | : | |
| BANCSHARES, INC. | : | |
| | : | |
| APPEAL OF: THE BERT COMPANY | : | |
| D/B/A NORTHWEST INSURANCE | | |
| SERVICES | | |

Appeal from the Judgment Entered June 3, 2019
In the Court of Common Pleas of Warren County Civil Division at No(s):
260 OF 2017

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.*

CONCURRING/DISSENTING OPINION BY COLINS, J.: **FILED: MAY 5, 2021**

Because I disagree with the learned majority's conclusions that the evidence at trial was sufficient to support the jury's verdicts against appellants First National Bank (FN Bank), and FNB Corporation (FNB) and that the contract between The Bert Company d/b/a Northwest Insurance Services (Plaintiff) and appellant Matthew Turk provided for recovery of attorney fees incurred solely in litigation to recover damages, I dissent from the majority's affirmation of the trial court's judgments against FN Bank and FNB and dissent in part from its affirmance of the attorney fee award against Turk.  In addition, while I agree with the majority's conclusions that compensatory and punitive damages awards against appellants First National Insurance Agency, LLC (FNIA) and Turk must be affirmed, I would affirm the judgment against Turk

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

and the punitive damages awards against FNIA and Turk on different grounds than the majority.

**Plaintiff's Claims Against FN Bank and FNB**

Appellants argue that the evidence at trial was insufficient for the jury to find defendants FN Bank and FNB liable for conspiracy and unfair competition and that the awards of compensatory punitive damages against them therefore cannot stand. I agree.

Whether the trial court erred in denying these defendants' motions for judgment notwithstanding the verdict (JNOV) is a question of law subject to our plenary review. *Shamnoski v. PG Energy*, 858 A.2d 589, 593 (Pa. 2004); *Phillips v. A−Best Products Co.*, 665 A.2d 1167, 1170 (Pa. 1995). A trial court's denial of JNOV is reversible error where, viewing the evidence admitted at trial in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was not sufficient competent evidence to sustain the verdict. *Shamnoski*, 858 A.2d at 593, 602, 606; *Wenrick v. Schloemann−Siemag Aktiengesellschaft*, 564 A.2d 1244, 1246, 1248 (Pa. 1989); *Diffenderfer v. Staner*, 722 A.2d 1103, 1104 (Pa. Super. 1998).

Both causes of action on which the jury found FN Bank and FNB liable require proof of intent to commit a wrongful act or intent to harm. Plaintiff's unfair competition claim required proof that these defendants acted either with a purpose to cripple Plaintiff's business or a purpose to have the

employees commit wrongs against Plaintiff. *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003); *Boyce v. Smith–Edwards–Dunlap Co.*, 580 A.2d 1382, 1390 (Pa. Super. 1990). A plaintiff has a cause of action for unfair competition against a competitor who hires away a group of its employees for the purpose of crippling and destroying the plaintiff's business, rather than to benefit itself. *Reading Radio, Inc.*, 833 A.2d at 212; *Boyce*, 580 A.2d at 1390; *Ozburn–Hessey Logistics, LLC v. 721 Logistics, LLC (Ozburn-Hessey I)*, 13 F.Supp.3d 465, 476-78 (E.D. Pa. 2014).

> [S]ystematically inducing employees to leave their present employment is actionable "when the purpose of such enticement is to cripple and destroy an integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employees."

*Reading Radio, Inc.*, 833 A.2d at 212 (quoting *Albee Homes, Inc. v. Caddie Homes, Inc.*, 207 A.2d 768 (Pa. 1965)). Hiring a competitor's employees for purposes of having them commit wrongful acts against their former employer can also support a cause of action for unfair competition, but it is an alternative basis for a cause of action for unfair competition, and is not an essential element where the plaintiff shows systematic hiring of employees to cripple and destroy the plaintiff's business. *Reading Radio, Inc.*, 833 A.2d at 212.

Evidence that a defendant offered employment to at-will employees of a competitor for the purpose of acquiring valuable employees for its own business, however, is not sufficient to support a cause of action for unfair

competition even if the competitor is harmed by that action. *Albee Homes, Inc. v. Caddie Homes, Inc.*, 207 A.2d 768, 771 (Pa. 1965); *Reading Radio, Inc.*, 833 A.2d at 212; *Boyce*, 580 A.2d at 1390. Absent evidence of a purpose to cripple the competitor or have the employees commit wrongful acts against their former employer, the hiring away of even a large number of a competitor's employees does not satisfy the elements of the tort of unfair competition and is not actionable. *Albee Homes, Inc.*, 207 A.2d at 771-72 (hiring of seven of competitor's salesmen was not actionable where the record supported only the conclusion that the defendant's purpose was to obtain experienced salesmen); *Boyce*, 580 A.2d at 1390 (defendant that hired "a substantial number" of plaintiff's employees was entitled to nonsuit where there was "no evidence" that it did so "in order to cripple and destroy" plaintiff rather than to obtain employees to start up its printing business); *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC (Ozburn-Hessey II)*, 40 F.Supp.3d 437, 453 (E.D. Pa. 2014) (no unfair competition cause of action for hiring nine of plaintiff's employees where employees were hired for their value to the hiring company, not to harm plaintiff).

A cause of action for civil conspiracy requires that the plaintiff prove that the defendant combined or agreed with one or more other parties to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose. *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008); *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004). Proof of malice,

that the defendant had an intent to injure, is an essential element of a conspiracy claim. **Skipworth v. Lead Industries Association, Inc.**, 690 A.2d 169, 174 (Pa. 1997); **Lackner v. Glosser**, 892 A.2d 21, 35 (Pa. Super. 2006); **Grose v. Procter & Gamble Paper Products**, 866 A.2d 437, 440 (Pa. Super. 2005); **Goldstein**, 854 A.2d at 590.

Here, the evidence with respect to FN Bank and FNB showed that these defendants approved the hiring of Turk and as many as seven other employees of Plaintiff. Plaintiff's Exs. 57, 60 (3/24/17 email), 61 at 2-3, 147, 149, 151, 152, 159, 164, 168, 170, 171, 172, 174; N.T. Trial, 12/14/18, at 226-28, 244-54; N.T. Trial, 12/17/18, at 95-96. In contrast to the evidence against FNIA, however, the record at trial was devoid of any evidence that FN Bank or FNB was aware of the effect on Plaintiff or considered that as a reason for hiring the employees in question. No FN Bank or FNB employees testified at trial and no witness testified that either of these defendants expressed or knew of an intent to cripple Plaintiff's business. While there was evidence in communications between FNIA President Martin Muchnok and employees of Plaintiff that Muchnok had an intent to harm Plaintiff's ability to service its customers and knew that Turk was soliciting customers of Plaintiff, no FN Bank or FNB employee was a party to any of those communications. **See** Plaintiff's Exs. 54, 61 at 1, 62, 104. To the contrary, the documents to which FN Bank and FNB were parties showed only that the approval was based on the value of the employees to FNIA; these documents refer to the desirability of

expanding FNIA in the Erie, Pennsylvania area and project that hiring the employees would be profitable for FNIA. Plaintiff's Exs. 57, 147, 149, 151, 159, 170. The fact that FN Bank and FNB approved the hiring of a significant number of Plaintiff's employees and did so for the purpose of quickly expanding FNIA's geographical reach is neither tortious or sufficient to support an inference of intent to destroy a competitor. **Albee Homes, Inc.**, 207 A.2d at 771; **Boyce**, 580 A.2d at 1390; **Ozburn-Hessey II**, 40 F.Supp.3d at 453 ("coordinated lift-out" of employees of a competitor hired for their value to the company does not constitute unfair competition).

Nor was there any evidence that FN Bank or FNB sought to have the employees from Plaintiff breach their non-solicitation agreements. The evidence showed that after FN Bank and FNB were informed of the non-solicitation agreements, their analysis of the profitability of hiring the employees was based on an assumption that none of Plaintiff's customers would transfer their business to FNIA during the one-year non-solicitation period under those agreements. Plaintiff's Exs. 147, 159, 170. Neither FN Bank nor FNB was a party to Muchnok's and Turk's communications concerning moving customers of Plaintiff to FNIA. **See** Plaintiff's Exs. 61 at 1, 62.

There was evidence that FN Bank and FNB were aware that FNIA was offering to buy a book of business from Plaintiff and approved the making of such an offer. Plaintiff's Ex. 172; N.T. Trial, 12/14/18, at 264-65; N.T. Trial,

12/17/18, at 95-96. That fact, however, does not show an intent to injure Plaintiff. Plaintiff's president admitted that it is a common and standard practice in the industry for a competitor who hires an insurance agency employee who has built up a book of business to offer to purchase that book of business. N.T. Trial, 12/11/18, at 115-16.

Neither Plaintiff nor the majority point to any evidence from which the jury could find that FN Bank or FNB had an intent to harm Plaintiff rather than a permissible intent to obtain valuable employees for FNIA or that either of these companies intended to induce Plaintiff's departing employees to violate their non-solicitation agreements. Rather, the evidence that the majority cites as supporting the verdict against FN Bank and FNB simply shows that these companies approved FNIA's hiring of a group of Plaintiff's employees that they believed would be valuable to FNIA and would expand its business and that they approved FNIA offering to purchase a book of business from Plaintiff. Neither of these facts constitutes tortious conduct or is sufficient to show the tortious intent required for unfair competition and conspiracy.

The majority also concludes that the judgment against FN Bank can be sustained on the basis of vicarious liability for FNIA President Muchnok's actions. Majority Opinion at 30-33. This basis for affirming the judgment fails for two reasons. First, it was not a theory that was asserted and presented to the jury at trial. Plaintiff did not base its claims against FN Bank and FNB on any contention that these defendants were vicariously liable for FNIA's or

Muchnok's actions. Rather, Plaintiff made it clear at trial that its claims against FN Bank and FNB were based solely on these companies' own acts and knowledge. N.T. Trial, 12/18/18, at 34-35. The jury was instructed that it "must decide whether punitive damages are to be assessed against each Defendant by that Defendant's conduct alone." N.T. Trial, 12/20/18, at 172. While the jury was instructed that a principal is liable for the acts of its agent, it was not instructed that an individual may be an agent of more than one principal. *Id.* at 150-54.[1]

Secondly, even if the jury had found that FN Bank was vicariously liable on the ground that Muchnok was its agent, that could not support its additional $500,000 punitive damage awards against FN Bank and FNB. Vicarious liability for an agent's acts and the agent's liability are a single tort for which both defendants are liable, not separate claims. *Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989); *Forbes v. King Shooters Supply*, 230 A.3d 1181, 1189 n.11 (Pa. Super. 2020). "A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor." *Mamalis*, 560 A.2d at

---

[1] To the extent that the majority is holding that FN Bank or FNB can be liable not because Muchnok was their agent but because a conspirator is liable for co-conspirators' actions, *see* Majority Opinion at 27, 32-33, that cannot support the verdicts against FN Bank and FNB because Plaintiff failed to prove an essential element of a cause of action for conspiracy, that FN Bank and FNB had malice, an intent to injure Plaintiff. *Skipworth*, 690 A.2d at 174; *Lackner*, 892 A.2d at 35.

1383. Thus, if the jury's verdicts against FN Bank and FNB were based on vicarious liability for Muchnok's conduct as their agent, the verdict could give rise to only a single, joint punitive damages award, not multiple cumulative awards, and the $500,000 punitive damages awards against FN Bank and FNB could not be added to and collected in addition to the $1.5 million punitive damages award against FNIA for the same conduct by Muchnok.

Because the evidence at trial showed only that FN Bank and FNB approved FNIA's hiring of employees that it considered to be economically valuable to FNIA and FNIA's offer to purchase a book of business from Plaintiff and Plaintiff introduced no evidence from which the jury could infer that FN Bank or FNB had an intent to harm Plaintiff, rather than benefit FNIA, Plaintiff did not prove the essential elements of its conspiracy and unfair competition claims against FN Bank and FNB. *Lackner*, 892 A.2d at 35; *Boyce*, 580 A.2d at 1390. Accordingly, FN Bank and FNB were entitled to JNOV in their favor on these claims and the punitive damages awards against these defendants on these claims must be set aside.

**The Attorney Fees Award Against Turk**

The trial court held that Plaintiff was entitled to attorney fees against Turk under Turk's 2017 non-solicitation agreement and awarded Plaintiff a total of $361,093.74, consisting of $244,579.00 in attorney fees incurred by Plaintiff in the injunction proceedings and $116,514.74 in attorney fees

incurred by Plaintiff in litigating its damages claims. Trial Court Opinion, 4/29/19 at 28.

Turk challenges this award of attorney fees and costs on two grounds: (1) that his non-solicitation agreement only permits Plaintiff to recover attorney fees incurred in the injunction proceedings; and (2) that the trial court erred in the percentages of Plaintiff's attorney fees and costs that it awarded against Turk. While I join in the majority's rejection of the latter argument and its affirmance of the award of attorney fees for the injunction proceedings, I would reverse the $116,514.74 award of attorney fees incurred by Plaintiff in litigating its damages claims.

As the majority correctly states, the issue of whether attorney fees in the damages litigation are recoverable under Turk's non-solicitation agreement is a question of law over which our review is plenary and *de novo*. Under Pennsylvania law, litigants cannot recover their attorney fees from an opposing party unless there is an express statutory authorization for award of attorney fees, a clear agreement by the parties that attorney fees may be recovered, or some other established exception. *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009); *Lavelle v. Koch*, 617 A.2d 319, 323 (Pa. 1992); *Bayne v. Smith*, 965 A.2d 265, 267 (Pa. Super. 2009). The burden is on the party seeking attorney fees to show that it has the right to recover such fees. *Petow v. Warehime*, 996 A.2d 1083, 1087 (Pa. Super. 2010); *Gall v. Crawford*, 982 A.2d 541, 549 (Pa. Super. 2009).

Section 8(d) of Turk's 2017 non-solicitation agreement contained the following provisions concerning remedies for breach of the agreement:

(i) I acknowledge that any violation of this Agreement may result in immediate termination of my Relationship with [Plaintiff] and may subject me to a civil action for money damages by [Plaintiff] for any and all losses sustained as a result of the unauthorized disclosure of any Confidential Information or other actions which breach any provision of this Agreement or any covenants contained herein.

(ii) I recognize that [Plaintiff's] remedies at law may be inadequate and that [Plaintiff] shall have the right to seek injunctive relief in addition to any other remedy available to it. If I breach this Agreement or any of the covenants contained herein, [Plaintiff] has the right to see[k] issuance of a court-ordered injunction as well as any and all other remedies and damages, to compel the enforcement of the terms stated herein. This provision with respect to injunctive relief shall not, however, diminish the right of [Plaintiff] to claim and recover damages in addition to injunctive relief. **If court action is necessary to enforce this Agreement, I shall be responsible for [Plaintiff's] reasonable attorney's fees and costs; provided that [Plaintiff] prevails i[n] said enforcement action** as determined by the appropriate court or tribunal before which matter is pending.

Plaintiff's Ex. 26 at § 8(d) (emphasis added).

Thus, the parties' agreement here clearly permitted recovery of attorney fees, but only for "court action … to enforce this Agreement." This language is not broad and does not expressly provide that Plaintiff can recover attorney fees in any action brought under the agreement or for breach of the agreement. *Compare Bayne*, 965 A.2d at 269 (parties' agreement provided for attorney fees "in an action brought for the recovery of rent or other money's [*sic*] due or to become due under this lease or by reason of a breach

of any covenant herein contained or for the recovery of the possession of said premises, or to compel the performance of anything agreed to be done herein, or to recover for damages to said property, or to enjoin any act contrary to the provisions hereof"); ***Profit Wize Marketing v. Wiest***, 812 A.2d 1270, 1272 (Pa. Super. 2002) ("if Employer prevails in any suit or action under this Agreement, Employee shall reimburse Employer for its expenses incurred in connection with such suit or action, including without limitation, its attorney's fees and costs") (emphasis omitted).

The injunction proceedings were unquestionably "court action … to enforce this Agreement;" the issue is whether the litigation that sought only to recover damages, rather than to compel compliance with the agreement, constitutes enforcement of the agreement.  I conclude that it does not.

The word "enforce" indicates an intent to allow attorney fees in proceedings brought to compel Turk to comply with the non-solicitation agreement and the obligations that it imposed, not to recover damages for a breach.  ***See Merriam-Webster's Collegiate Dictionary*** 413 (11th Ed. 2003) (defining "enforce" as "constrain," "compel," and "carry out effectively").  An action for payment of money falls within a provision for attorney fees in an action to enforce a contract where the money sought consists of payments that the defendant is required to make under the contract. ***See Trizechahn Gateway LLC***, 976 A.2d at 477, 482-84 (attorney fees in action for moneys due under lease were recoverable under agreement

"to pay a reasonable attorney's fee if legal action is required to enforce performance by Tenant of any condition, obligation or requirement hereunder").  Here, however, the relief that Plaintiff sought in the damages litigation consisted of recovering compensation for harm caused by the breach of the agreement, not the compelling of payments required under the agreement or the compelling of compliance with any obligation under the agreement.

Moreover, the attorney fees provision is set forth in the section of the non-solicitation agreement, Section § 8(d)(ii), providing for injunctive relief, not the section that set forth Plaintiff's right to bring an action for damages, Section § 8(d)(i).  This fact would not compel the conclusion that attorney fees are limited to actions for injunctive relief if the language of the attorney fees provision clearly encompassed actions for damages.  **_Trizechahn Gateway LLC_**, 976 A.2d at 482-84.  The language "court action … to enforce this Agreement," however, does not clearly refer to damages actions, as opposed to enforcement of obligations under the agreement.  The placement of the attorney fees provision in the section of the agreement authorizing injunctive relief to enforce compliance with the agreement therefore further suggests that the attorney fees provision was not intended as an authorization of attorney fees incurred in recovering damages for harm caused by a breach of the agreement.

Neither of the cases relied on by the majority, ***McMullen v. Kutz***, 985 A.2d 769 (Pa. 2009) and ***DiLucente Corp. v. Pennsylvania Roofing Co.***, 655 A.2d 1035 (Pa. Super. 1995), supports its conclusion that the attorney fees provision in the 2017 non-solicitation agreement encompasses Plaintiff's attorney fees in the damages litigation. In ***McMullen***, the attorney fees that were awarded under a provision that "the party breaching this contract shall be responsible for payment of legal fees and costs incurred by the other in enforcing their rights under this Agreement" were incurred in obtaining payments that were owed the agreement, not consequential damages caused by a past breach of the agreement. 985 A.2d at 771-72. Thus, as in ***Trizechahn Gateway LLC***, the proceeding in which the fees were incurred was an enforcement of a payment obligation under the contract and therefore fell within the attorney fees provision. ***DiLucente Corp.*** did not involve any contractual provision for payment of attorney fees and did not hold that a consequential damages claim constitutes an action to enforce a contract. Rather, it involved the issue of injunctive relief to enjoin an arbitration and did not discuss what constitutes enforcement of a contract at all.

Because it was Plaintiff's burden to show a clear agreement to pay the attorney fees that it sought and it showed only a clear agreement to pay attorney fees incurred in litigation to enforce compliance with Turk's obligations under the non-solicitation agreement, the trial court's award of

$116,514.74 in attorney fees incurred by Plaintiff in pursuing its damages claims must be set aside.

**Plaintiff's Tort Claims Against Turk**

The sole basis for Turk's claim that he is entitled to JNOV is the argument that Plaintiff's breach of fiduciary duty and civil conspiracy claims against him are barred by the gist of the action doctrine. I agree with the majority that this argument fails, but for reasons different than those set forth by the majority.

As the majority states, the gist of the action doctrine prohibits a plaintiff from suing and recovering in tort on claims that are in fact breach of contract claims. *B.G. Balmer & Co. v. Frank Crystal & Co.*, 148 A.3d 454, 468 (Pa. Super. 2016); *Knight v. Springfield Hyundai*, 81 A.3d 940, 950 (Pa. Super. 2013); *see also Bruno v. Erie Insurance Co.*, 106 A.3d 48, 60 (Pa. 2014). The existence of a contract between the parties, however, does not make all claims for damages breach of contract claims. *Bruno*, 106 A.3d at 69; *B.G. Balmer & Co.*, 148 A.3d at 469. The nature of the duty that the plaintiff alleges that the defendant breached is the critical factor in determining whether a tort claim is truly a breach of contract claim and therefore barred by the gist of the action doctrine. *Bruno*, 106 A.3d at 68.

The majority holds that the gist of the action does not apply because some of Turk's conduct on which Plaintiff's claims for breach of fiduciary duty and conspiracy were based occurred before Turk's 2017 non-solicitation

- 16 -

agreement and because his solicitation of a prospective employee of Plaintiff did not violate the 2017 non-solicitation agreement. I do not agree that tort judgment against Turk can be upheld on this basis.

Contrary to the majority's statements, the record demonstrates that all the breaches of fiduciary duty and conspiracy claims that Plaintiff alleged were violations of provisions of Turk's non-solicitation agreements. Before he entered into the 2017 non-solicitation agreement, Turk was already subject to a 2005 non-solicitation agreement and Plaintiff contended at trial that Turk was bound by the 2005 agreement. That 2005 agreement expressly prohibited the solicitation of employees and the disclosure of Plaintiff's customer lists and commission and fee information during Turk's employment. Plaintiff's Ex. 3 ¶¶(2), (3). With respect to Turk's later conduct, the solicitation of a prospective employee of Plaintiff violated Section 5 of the 2017 non-solicitation agreement, which provided:

> During my Relationship with [Plaintiff], I will not, alone or with others, directly or indirectly, work on, plan, prepare for, organize or engage in any consulting, employment or other business activity (whether or not for compensation) that is competitive with the business in which [Plaintiff] is involved or may hereafter become involved, nor will I engage in any other activity that conflicts with my obligations to [Plaintiff].

Plaintiff's Ex. 26 § 5.

The fact that the tort claims were based on the same conduct that also breached the parties' contracts does not, however, mandate the conclusion that they are barred by the gist of the action doctrine. Rather, the critical

issue is whether the tort claims are based on a violation of a social duty imposed by the law of torts that exists independent of the terms of the parties' contract. **Bruno**, 106 A.3d at 68. Thus, where a tort claim is based on a fiduciary duty that exists by virtue of the defendant's employment separate and apart from the terms of any contract between the parties, it is not barred even though the same conduct also constitutes a breach of an express contractual obligation. **Teva Pharmaceuticals USA, Inc. v. Sandhu**, 291 F.Supp.3d 659, 678 (E.D.Pa. 2018) (breach of fiduciary duty claim for disclosing confidential information to competitor not barred by gist of the action doctrine even though same conduct violated employee's confidentiality agreement).[2]

Here, the breach of fiduciary duty and conspiracy claims against Turk were premised on tort law duties that arose out of his position with Plaintiff, not on the provisions of his non-solicitation agreements. An employee owes his employer a duty of loyalty not to act during his employment for a competitor of his employer, even if he is not under any non-competition or non-solicitation agreement. **AmQuip Crane Rental, LLC v. Crane & Rig Services, LLC**, 199 A.3d 904, 913-15 (Pa. Super. 2018); **Reading Radio, Inc.**, 833 A.2d at 204, 211. Turk, as Plaintiff's Senior Vice President

---

[2] Although federal court decisions are not binding on this Court, we may rely on them for persuasive value. **AmQuip Crane Rental, LLC v. Crane & Rig Services, LLC**, 199 A.3d 904, 918 n.4 (Pa. Super. 2018).

Property/Casualty, therefore owed Plaintiff a duty to not assist Plaintiff's competitor, FNIA. Turk's solicitation of employees and customers to leave Plaintiff and go to FNIA and his work with FNIA to move the employees and customers from Plaintiff to FNIA and time the employee departures to maximize harm to Plaintiff violated this tort law duty. *AmQuip Crane Rental, LLC*, 199 A.3d at 913-15; *Reading Radio, Inc.*, 833 A.2d at 211.

Because Plaintiff's breach of fiduciary duty and civil conspiracy claims against Turk were based on duties that arose under tort law and not from the provisions of his non-solicitation agreements, I would therefore hold that those claims are not barred by the gist of the action doctrine even though they were also breaches of those contracts. *Teva Pharmaceuticals USA, Inc.*, 291 F.Supp.3d at 678.

### Constitutionality of the Punitive Damages Award

Appellants argue that the $2.8 million in punitive damages awarded by the jury is unconstitutionally disproportionate to Plaintiff's compensatory damages under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), because it is over 10 times the amount of the $250,000 in compensatory damages that the jury found that Plaintiff suffered. In light of my conclusion that FN Bank and FNB are entitled to JNOV on all claims and that only the $300,000 punitive damage award against Turk and $1.5 million punitive damage award against FNIA should remain, the ratio of the total legally valid punitive damages awards, $1.8 million, to the

$250,000 in compensatory damages is 7.2 to 1, significantly less than 10 times the compensatory award. I therefore do not find it necessary to consider the validity of a $2.8 million punitive damages award in this case or to address the majority's analysis of whether the punitive damages awards may be separately analyzed for each defendant without considering their cumulative effect and do not join in the majority's conclusions on these issues.

Appellants also contend that any ratio of punitive to compensatory damages above 2 to 1 is constitutionally excessive. That argument is without merit. In **State Farm**, the Supreme Court stated that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety" and concluded that where the compensatory award was $1 million and contained a noneconomic, punitive element, analysis of the due process considerations "likely would justify a punitive damages award at or near the amount of compensatory damages." 538 U.S. at 425, 429. The Court, however, declined to impose a specific ratio that punitive damages cannot exceed and held that "because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" **Id.** at 425 (quoting **BMW of North America, Inc. v. Gore**, 517 U.S. 559 (1996)).

Here, the compensatory award consisted of solely economic damages with no punitive component. Moreover, the compensatory damages that the jury found that Plaintiff suffered were low in proportion to the harm that Plaintiff showed that FNIA and Turk sought to inflict on Plaintiff. While Plaintiff ultimately suffered only $250,000 in damages, the amount of business that FNIA and Turk sought to make Plaintiff lose was at least $1.3 million. N.T. Trial, 12/11/18, at 51. The amount of the total punitive award, $1.8 million, while high in comparison to Plaintiff's actual loss, is not extraordinary in comparison to the harm and gain that FNIA and Turk sought from their conduct. Given these facts, a 7.2 to 1 ratio of punitive damages to compensatory damages is not unconstitutional under the decisions of the United States Supreme Court or our courts. *See Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 938-39 & n.3 (Pa. Super. 2013) ($1.5 million award in business tort case was not unconstitutionally disproportionate to $271,000 compensatory damages award).

For the foregoing reasons, I would vacate Plaintiff's judgments against FN Bank and FNB and the trial court's award of attorney fees against Turk insofar as it included attorney fees incurred by Plaintiff in its litigation of its damages claims and would affirm the breach of fiduciary duty judgment against Turk and the punitive damages awards against Turk and FNIA solely on the grounds discussed above.